IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRACEY MICHAEL RODWELL              :

                                :

    v.                           :   Civil Action No. DKC 22-3014

                                :

WICOMICO COUNTY, MARYLAND           :

                                :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this civil rights action is the motion to dismiss filed by Defendants Wicomico County, Maryland, et al.  (ECF No. 36).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion to dismiss will be granted in part and denied in part.

## I.   Background[1]

On or about October 13, 2022, Plaintiff suffered a seizure while he was a pretrial detainee at Wicomico County Detention Center ("the Detention Center").  (ECF No. 33 ¶ 17).  Two other detainees in the unit heard a noise coming from Plaintiff's cell and walked to his door to check on him.  (*Id.* ¶ 20).  They observed him lying on the ground and believed he was having a medical emergency.  (*Id.*).  Almost immediately, both men ran to the unit

---

[1] Unless otherwise noted, the facts outlined here are set forth in the Second Amended Complaint and construed in the light most favorable to Plaintiff.

door and banged on it to get the attention of the correctional officers in the hallway.  (*Id.* ¶ 21).   Officers Elmer Barrall, Joseph Daly, Deniece Davis, Richard Elliott III, Zachary Emmert, Preston Foreman, Sylvester Kellman, Jacob Skarson, James Sterling, and Jonathan Watson (collectively, "Defendant Officers") responded to the unit.[2]  (*Id.* ¶ 22).   About a minute later, several medical staff members entered the unit.  (*Id.* ¶ 23).   They remained there for approximately 30 minutes.   (*Id.*).   Two of the Defendant Officers entered Plaintiff's cell to attend to him.   (*Id.* ¶ 24).

Plaintiff alleges upon information and belief that Lt. Davis ordered at least two of the officers to remove Plaintiff from his cell.  (*Id.* ¶ 25).   One officer grabbed Plaintiff's ankles, another grabbed his leg, and at least one more officer picked Plaintiff up around his upper body area.  (*Id.* ¶ 26).   They laid him onto the concrete floor in the hallway.  (*Id.* ¶ 27).   Plaintiff, still suffering a seizure, involuntarily attempted to sit up several times after being laid on his back.  (*Id.* ¶ 28).   In response, the officers surrounding Plaintiff piled on top of him to force his body back down to the floor.  (*Id.* ¶ 29).   For nearly 30 minutes, the officers repeatedly forced Plaintiff to lie back down on the ground while medical staff stood by and watched.  (*Id.* ¶¶ 31, 34).

---

[2] On February 14, 2023, Defendants filed a letter they sent to Plaintiff disclosing these names as the "individuals who may have been involved in your alleged complaint."  (ECF No. 12-1, at 1).

Lt. Davis ordered that Plaintiff be restrained. (*Id.* ¶ 32). The handcuffs were placed on Plaintiff so tightly that they caused damage to his wrists and hands. (*Id.*). The handcuffs were connected to a secondary chain that was wrapped around Plaintiff's waist. (*Id.* ¶ 33). Plaintiff was then hoisted onto a stretcher by his wrists and pant legs. (*Id.* ¶ 34).

Plaintiff regained consciousness while being transported to Tidal Health Peninsula Regional Hospital in Salisbury, Maryland. (*Id.* ¶ 35). Plaintiff asked the transport officer, Officer Burrell,[3] what happened to him and why his arm hurt. (*Id.* ¶ 36). Officer Burrell informed Plaintiff that he had a seizure, but did not have any additional information for him. (*Id.*). Plaintiff was examined by doctors upon arrival at the hospital but was not informed of his injuries or any care or treatment that needed to be administered upon his return to the Detention Center. (*Id.* ¶ 37). When he arrived back to the Detention Center, he was taken to the medical tier where he complained of pain in his left arm, left shoulder, left side of his neck, left elbow, and right hand. (*Id.* ¶ 38). He received only Motrin to address his injuries. (*Id.* ¶ 39).

Plaintiff was released from the Detention Center approximately 11 days later. (*Id.* ¶ 41). Upon release, he sought

---

[3] It is possible Plaintiff meant to refer to Officer Elmer Barrall, one of Defendant Officers involved at the scene.

medical treatment from an orthopedic specialist at Peninsula Orthopedic Associates. (*Id.* ¶ 42). His MRI showed a torn rotator cuff and a buildup of scar tissue that caused him additional pain. (*Id.* ¶ 42, 57, 111). A secondary MRI also showed multiple sprains to his left hand. (*Id.* ¶ 43). Currently, Plaintiff wears a brace for pain management. (*Id.* ¶ 44). Although he was self-sufficient before this incident, his injuries made it difficult to return to work and he is now dependent on others for assistance with most daily tasks. (*Id.* ¶ 45).

## II. Standard of Review

In reviewing the Second Amended Complaint in light of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed.R.Civ.P. 8(a)(2)); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002) (stating that a complaint need only satisfy the "simplified pleading standard" of Rule 8(a)).

The Supreme Court of the United States explained that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed.R.Civ.P. 8(a)).   Nonetheless, the complaint does not need "detailed factual allegations" to survive a motion to dismiss.  *Id.*  Instead, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Id.* at 563. To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (quoting Fed.R.Civ.P. 8(a)(2)).

## III. Analysis

### A. Group Pleading

Defendants contend that Plaintiff's claims should be dismissed because Plaintiff engaged in impermissible group pleading.  (ECF No. 36-1, at 6-7) (citing *Vinnedge v. Gibbs*, 550

F.2d 926, 928 (4th Cir. 1977) (dismissing superintendent of jails because plaintiff "failed to allege any personal connection between [the superintendent] and any denial of [plaintiff's] constitutional rights"); *Thomas v. Maryland*, No. 17-cv-1739-GJH, 2017 WL 6547733, at *6 (D.Md. Dec. 20, 2017) (dismissing officers because plaintiffs "are unable to identify even a limited group of officers actually responsible for the alleged harms"); *Calhoun v. Prince George's Cnty., Md.*, No. 12-cv-2014-DKC, 2013 WL 3873224, at *3 (D.Md. July 24, 2013) (dismissing three officers and providing plaintiff an opportunity to file a second amended complaint with more factual detail where plaintiff "does not differentiate among the . . . three, but merely alleges that . . . he was apprehended [and beaten] by all of them"); *Krell v. Queen Anne's Cnty.*, No. 18-cv-637-JKB, 2018 WL 6523883, at *20 (D.Md. Dec. 12, 2018) (dismissing an officer where plaintiff "refer[s] to unidentified officers and make[s] conclusory statements" including that they "refused to timely render appropriate medical assistance" and "participated in and enabled the pattern or practice and conduct which interfered with [Plaintiff's] medical treatment")).

As Plaintiff argues, each case Defendants cite is distinguishable. (ECF No. 41, at 9-11). In *Vinnedge*, the United States Court of Appeals for the Fourth Circuit dismissed the superintendent of jails but remanded to the district court to

determine whether dismissal was proper as to the individual detectives, who "clearly were in custody of the plaintiff during some period of time[.]" *Vinnedge*, 550 F.2d at 929.

In *Thomas*, the plaintiffs attributed all claims to 28 individual police officers, and "seemingly list[ed] every possible officer they [could] find, potentially including officers that were not present on the scene or omitting others that were." *Thomas*, 2017 WL 6547733, at *6. Here, on the other hand, Plaintiff named only the ten officers that Defendants provided to Plaintiff as individual officers involved in the alleged use of force against Plaintiff. (ECF Nos. 12-1; 33 ¶¶ 7-16).

In *Calhoun*, the plaintiff's sole allegation was that he "was apprehended by the aforesaid police officers, and was beaten, about the head, body, and limbs, assaulted, battered, falsely imprisoned, and falsely arrested, by the defendants OFC SCHWEINSBURG # 3331, OFC LACOMBE # 3110, OFC BURROUGHS # 2879, OFC AVERY # 2401." *Calhoun*, 2013 WL 3873224, at *3. This court found the plaintiff's allegations "far too conclusory to state an excessive force claim adequately[]" and provided the plaintiff "an opportunity to supply enough factual detail to state a claim" in a second amended complaint. *Id.* Here, although Plaintiff similarly does not distinguish among the ten individual officers, his allegations are more specific than simply alleging excessive force.

7

Finally, in *Krell*, Judge Bredar dismissed one individual officer who had been grouped in with the other "Defendant Corrections Officers" in the complaint. *Krell*, 2018 WL 6523883, at *20 (citation omitted). The plaintiff alleged that the individual officer was "responsible for a pattern and practice of misconduct[]" but provided "no additional facts . . . as to her actions, omissions, or, even, presence." *Id.* Unlike the "conclusory allegations made against a group of individuals" that were "not specific enough to state a § 1983 claim" in *Krell*, here the complaint includes specific allegations about the ten officers' actions, omissions, and presence. *Id.*

A case that neither party identified, *J.A. v. Miranda*, No. 16-cv-3953-PX, 2017 WL 3840026 (D.Md. Sept. 1, 2017), is more akin to this case. There, the plaintiff "could not specifically identify by name each particular Officer" involved in an alleged use of excessive force because "he was being beaten." *Id.* at *1. Instead, he alleged against all officers involved in the beating that "one or more of the officers hit and kicked [him] in the face and/or mouth" and "placed a bag over [his] head and zip-tied the bag around his neck." *J.A.*, 2017 WL 3840026, at *1. Acknowledging that "[g]roup pleading is not ideal," Judge Xinis ruled that "at the pleading stage, a plaintiff is not expected to possess complete knowledge of the defendant's alleged wrongful conduct, but need only submit facts sufficient to plead a plausible

claim for relief." *Id.* at *3.  Judge Xinis provided the following

reasoning in denying the officers' motion to dismiss:

> That the complaint does not specify by name
> those officers who specifically kicked [the
> plaintiff] in the face or put a bag over his
> head is hardly fatal.  [The plaintiff], as the
> person experiencing the beating, would not
> plausibly be able to identify the officers
> with particularity.  But at the same time,
> those officers at the scene are identified,
> thus placing them on sufficient notice of the
> claims and the nature of the alleged jointly
> undertaken group misconduct.

*Id.*

The same is true here.  Plaintiff limits his allegations to

the ten officers Defendants confirmed "may have been involved" at

the scene.  (ECF Nos. 12-1, at 1; 33 ¶¶ 7-16).  Because he was

unconscious, it is not fatal that he cannot distinguish by name

which officers allegedly "grabbed [his] ankles," "grabbed his

leg," "picked [him] up around his upper body area[,]" "laid [him]

onto the concrete floor[,]" "piled on top of him in order to force

his body back down to the floor[,]" "repeatedly forced [him] to

lay back down on the ground[,]" placed handcuffs on him "so tightly

that they caused damage to his wrists and hands[,]" or "connected

[the handcuffs] to a secondary chain that was wrapped around [his]

waist."  (ECF No. 32 ¶¶ 26, 27, 29, 31, 32, 33); *see also*

*J.A.*, 2017 WL 3840026, at *3 (holding that group pleading is

sufficient "where the injured party was the alleged victim of a

group beat down which, no doubt, severely disadvantaged him and

any onlookers in identifying precisely which officers committed which bad acts"); *Bailey v. Campbell*, No. 522-cv00052-KDB, 2024 WL 482211, at *3-4 (W.D.N.C. Feb. 7, 2024) (finding that plaintiff who alleged that six deputies waited for him outside the holding cell and three grabbed him and shoved him into the unmonitored room alleged enough specific factual allegations to survive a motion to dismiss).  Although Plaintiff cannot—at this point—identify which officer committed which alleged acts, his allegations are targeted at only the officers present at the cell extraction and specific enough to survive a motion to dismiss on the ground of group pleading.

**B. Common Law Tort Claims**

Plaintiff brings claims for negligence (Count I) and gross negligence (Count II) against all Defendants, and battery (Count V) against Defendant Officers.

**1. Governmental Immunity**

Defendants contend that Defendant County[4] should be dismissed from Count I (negligence) and Count II (gross negligence)[5] because, as a municipality, it is immune from suit based on the tortious

---

[4] Defendants mistakenly refer to Wicomico County as the Town. (ECF No. 36-1, at 7).

[5] Defendants also mistakenly assert that Plaintiff seeks to hold Defendant County liable for Count V—battery.  (ECF No. 36-1, at 7).  In fact, Plaintiff only alleges Count V against Defendant Officers.

acts of its employees.  (ECF No. 36-1, at 7-11).  Plaintiff argues that Defendant County is not immune from liability "where the officer acted within the scope of his or her duties and without malice" because the Local Government Tort Claims Act ("LGTCA") "provides an *express statutory* waiver of sovereign immunity for tortious conduct[.]"  (ECF No. 41, at 12, 13) (citing *DiPino v. Davis*, 354 Md. 18, 49 (1999)).  Plaintiff asserts that "[a]s the application of the LGTCA turns on questions of intent and motivation, a highly nuanced and fact-specific determination, this issue is best reserved for the trier of fact and is inappropriate for resolution at the motion to dismiss stage."  (ECF No. 41, at 14) (citing *Romanesk v. Rose*, 248 Md. 420, 424 (1968)).  In the alternative, Plaintiff contends that even if sovereign immunity applies, Defendant County "is still a necessary party to this case as a potential indemnitor."  (ECF No. 41, at 16).  Defendants respond that Plaintiff misreads *DiPino* and Defendant County cannot be sued directly solely because of its defense and indemnification responsibilities.  (ECF No. 44, at 4-6).

Plaintiff conflates Defendant County's duties to defend and indemnify its employee in a tort suit with a waiver of sovereign immunity.  "[M]unicipalities are generally immune from common law tort suits when engaged in governmental, as opposed to proprietary, acts."  *Devi v. Prince George's Cnty.*, No. 16-cv-3790-DKC, 2017 WL 3592452, at *2 (D.Md. Aug. 21, 2017) (citing *Nam v. Montgomery*

*Cnty.*, 127 Md.App. 172, 182 (1999); *DiPino*, 354 Md.App. at 47).

"[T]he operation of prisons and jails is a government function."
*Jones v. Montgomery Cnty.*, No. 1910 Sept. term 2014, 2016 WL
1321396, at *4 (Md.Ct.Spec.App. Apr. 5, 2016) (citing *Jones Hollow
Ware Co. of Baltimore City v. Crane,* 134 Md. 103, 115 (1919)).
Thus, Defendant County is immune as to common law tort claims
asserted against it based on torts committed by employees of its
prisons and jails.

Plaintiff is correct that § 5-303(b) of the LGTCA requires
Defendant County to indemnify a judgment against its employee for
damages resulting from a tortious act committed by the employee
without malice or gross negligence in the scope of employment.
Md. Code Ann., Cts. & Jud. Proc. § 5-303(b)(1); *see also Hansen v.
City of Laurel*, 420 Md. 670, 689 (2011) (quoting *Ashton v.
Brown*, 339 Md. 70, 104 (1995)) (noting that the LGTCA "shifts
financial liability for wrongs committed by local government
officials, acting in the scope of their employment and without
malice, from the public officials to the local government entity
itself").  The LGTCA, however, "does not permit a plaintiff to
name Defendant County directly in a common law tort suit." *Devi*,
2017 WL 3592452, at *2 (citing Md. Code Ann., Cts. & Jud. Proc.
§ 5-303(b); *Martino v. Bell*, 40 F.Supp.2d 719, 722 (D.Md. 1999)).

Plaintiff relies on *Baltimore City Police Department v.
Esteppe*, 247 Md.App. 476 (2020), *aff'd*, 476 Md. 3 (2021), for the

proposition that a "local government's liability for any judgment can be appropriately addressed within the underlying tort action against the employee."  (ECF No. 41, at 18).  Plaintiff argues that it would be more "efficient" for Defendant County to remain in this suit rather than requiring Plaintiff to bring another suit to enforce Defendant County's obligation to pay an underlying judgment.  (ECF No. 41, at 18) (quoting *Estepp*, 247 Md.App., at 511).  In *Esteppe*, the plaintiff obtained a judgment against a former police officer.  *Id.* at 486.  In the same action as the underlying tort suit, the plaintiff filed a motion for declaratory relief to recover the judgment from the police department and the city, who had previously been dismissed from the suit.  *Id.* at 494.

The state courts ruled that, if indemnification is disputed after a favorable verdict in the underlying tort action, a tort plaintiff may proceed to establish a local government's liability under the LGTCA either in the underlying tort action or in a separate action at a later date.  Whichever mechanism is chosen, however, two requirements must be met:  (1) the local government must be a party to the proceeding, and (2) plaintiff must make a claim to enforce the obligation.  *Id.* at 500-06.

Here, Defendant County *is* a party to the suit.  Plaintiff's current complaint does not seek a declaration that Defendant County would be liable to pay a judgment entered against one of its

employees.   Rather, the Second Amended Complaint seeks to hold Defendant County directly liable for damages resulting from torts committed by its employees.   Because "the LGTCA does not permit a plaintiff to sue the local government directly" in a common law tort suit, *Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F.Supp.3d 392, 411 (D.Md. 2022), the claims against Defendant County will be dismissed without prejudice from Counts I and II, but Defendant County will not be dismissed from the action.   Plaintiff will have the opportunity to file a third amended complaint seeking a declaration that, if Defendant Officers are found liable for any of the tort claims, Defendant County must pay the judgment.

### 2. Public Official Immunity

Defendants argue that Defendant Officers have common law and statutory public official immunity against all state common law claims not based on malice or gross negligence, and that Plaintiff has not pled facts that would support a plausible claim for either malice or gross negligence.  (ECF No. 36-1, at 11-12).  Plaintiff counters that "public official immunity does not apply to the vast majority of Plaintiff's claims" because "immunity does not apply where:  (1) the plaintiff asserts a constitutional tort, (2) the plaintiff asserts an intentional tort, (3) a jury determines that the official acted with gross negligence, or (4) a jury determines that the official acted with malice."  (ECF No. 41, at 20).

Plaintiff maintains he pled sufficient facts to demonstrate gross negligence because

> [a] reasonable juror could conclude either that the Defendant Officers (1) did not know what medical emergency Plaintiff was suffering and did not know the proper treatment, but nevertheless rendered significantly deficient medical aid despite trained medical professionals standing nearby or (2) knew that Plaintiff was suffering a seizure, knew that restraining a seizing person could, and likely would, result in stress injuries caused by the involuntary movements, and nevertheless proceeded to forcibly restrain Plaintiff while he was still undergoing the seizure.

(ECF No. 41, at 24).   Plaintiff also asserts that a special relationship between Plaintiff and Defendants defeats public official immunity because Plaintiff was in Defendants' custody. (ECF No. 41, at 21) (quoting *Ashburn v. Anne Arundel Cnty.*, 306 Md. 617, 631 (1986)).   Defendants respond that "without any differentiation or specification of wrongdoing, there is not a plausible basis to claim the individual officers acted with gross negligence or malice[.]"   (ECF No. 8).

"[A] governmental actor enjoys a certain public official immunity for his or her non-malicious acts if it is determined that:  (1) he is a 'public official,' and (2) his tortious conduct occurred while he was performing discretionary acts in furtherance of his duties." *Dunbar v. Biedlingmaier*, No. 20-cv-0738-DKC, 2022 WL 814293, at *8 (D.Md. Mar. 17, 2022) (quoting *Ashburn*, 306 Md. at 622).   Here, Defendant Officers are public officials. *Cooper*

*v. Rodriguez*, 443 Md. 680, 713 n.13 (2015) ("Prison guards or correctional officers are public officials."). Plaintiff does not dispute that Defendant Officers' alleged negligence occurred while they were performing discretionary acts in furtherance of their duties. Indeed, Defendant Officers exercised their personal judgment in determining how to respond to Plaintiff's seizure. *See Livesay v. Baltimore Cnty.*, 384 Md. 1, 17 (2004) (holding that corrections officer performed discretionary act when he "commence[d] direct lifesaving measures" in response to incarcerated person's suicide attempt).

To defeat public official immunity, a plaintiff must allege that the defendant acted with malice or gross negligence or committed an intentional tort or state constitutional tort. *Johnson v. Baltimore Police Dep't*, 452 F.Supp.3d 283, 297-98 (D.Md. 2020). "Actual malice is established by proof that the defendant-officer intentionally performed an act without legal justification or excuse, but with an evil or rancorous motive influenced by hate, the purpose being to deliberately and willfully injure the plaintiff." *Id.* at 298 (quoting *Bord v. Baltimore Cnty.*, 220 Md.App. 529, 557 (2014)) (internal citation marks omitted). "A plaintiff cannot 'rely on bare allegations that a particular act raises an inference of malice.'" *Koon as next friend of Glay v. Prince George's Cnty., MD*, No. 17-cv-2799-DKC, 2019 WL 1317401, at *7 (D.Md. Mar. 22, 2019) (quoting *Hines v.*

16

*French*, 157 Md.App. 536, 563 (2004)).  "Instead, a plaintiff asserting malice 'must point to specific evidence that raises an inference that the defendant's actions were improperly motivated in order to defeat the motion.'"  *Id.* (quoting *Hines*, 157 Md.App. at 563).

Plaintiff has alleged facts sufficient to raise an inference of malice.  He pled that while he "convuls[ed] uncontrollably" during his seizure, Defendant Officers "piled on top of him in order to force his body back down to the floor[,]" "repeatedly shoved [him] to the ground for nearly 30 minutes . . . while medical staff stood mere inches away[,]" and applied handcuffs "so tightly that they caused damage to his wrists and hands."  (ECF No. 33 ¶¶ 19, 29, 32, 34).  He alleged that Defendant Officers' actions caused a torn rotator cuff, buildup of scar tissue that causes pain, and multiple hand sprains.  (ECF No. 33 ¶¶ 42, 43, 57).  Plaintiff has not "'[m]erely assert[ed] that an act was done maliciously' but rather . . . 'allege[d] with some clarity and precision those facts which make the act malicious.'"  *Cooper v. Doyle*, No. 22-cv-0052-DKC, 2022 WL 16923857, at *3 (D.Md. Nov. 14, 2022) (quoting *Elliott v. Kupferman*, 58 Md.App. 510, 528 (1984)).  Even if Plaintiff convulsed uncontrollably during his seizure, there is no indication that he was combative or violent toward the correctional officers, or that he was attempting to evade restraint.  *See Layden v. Stanley*, No. 4:22-cv-61-FL, 2023 WL

3733903, at *4 (E.D.N.C. May 30, 2023) (finding that plaintiffs sufficiently alleged malice where they pled that the plaintiff "had not been combative, or otherwise violent toward the officers" and had been "handcuffed, possessed no weapon, and did not try to flee").  Rather, Plaintiff's allegations suggest that Defendant Officers' decision to pile on top of him and repeatedly shove him to the ground constituted an "[u]njustified application of malignant force," which courts in this district have held "may give rise to a reasonable inference that [an officer] was motivated by ill will toward or an affirmative intent to injure Plaintiff." *Est. of LeRoux v. Montgomery Cnty., Maryland*, No. 8:22-cv-00856-AAQ, 2023 WL 2571518, at *20 (D.Md. Mar. 20, 2023) (quoting *Solis v. Prince George's cnty.*, 153 F.Supp.2d 793, 805 (D.Md. 2001)).

Plaintiff has also alleged facts sufficient to support an inference of gross negligence.  Gross negligence is

> An intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them.  Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he [or she] inflicts injury intentionally or is so utterly indifferent to the rights of others that he [or she] acts as if such rights did not exist.

*Cooper*, 443 Md. at 708.  Defendant Officers' alleged decision to shove Plaintiff to the floor repeatedly for nearly 30 minutes

instead of instructing the medical staff, who stood watching, to provide medical attention "'implies a thoughtless disregard of the consequences' (i.e., [Plaintiff's] injuries) 'without the exertion of any effort to avoid them.'" *Shields v. Prince George's Cnty., Maryland*, No. 15-cv-1736-GJH, 2019 WL 3536800, at *13 (D.Md. Aug. 2, 2019) (quoting *Cooper*, 443 Md. at 708).  The claims against Defendant Officers in Counts I (negligence) and II (gross negligence) will therefore proceed to discovery.

Plaintiff also alleges that Defendant Officers committed the intentional tort of battery.  "Under Maryland law, '[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent.'" *Young v. Prince George's Cnty., Maryland*, 355 F.3d 751, 759 (4th Cir. 2004) (quoting *Nelson v. Carroll,* 355 Md. 593, 600 (1999)).  Plaintiff has alleged facts that, if proven, would establish that Defendant Officers battered him by piling on top of him and repeatedly shoving him to the ground.  (ECF No. 33 ¶¶ 29, 31).  Public official immunity does not apply to his battery claim.  It is well settled that "public official immunity does not apply in the case of intentional torts, such as battery." *Touko v. United States*, No. 20-cv-1113-GJH, 2021 WL 2685328, at *3 (D.Md. June 29, 2021) (citing *Cooper*, 443 Md. at 713 n.14) ("A public official is not entitled to common law public official immunity where the official committed an intentional tort[.]"); *Ashton*, 339 Md. at 117 ("Public official

immunity is not a defense to these intentional torts."); *Cox v. Prince George's Cnty.*, 296 Md. 162, 169 (1983) ("[A] police officer does not enjoy this immunity if he commits an intentional tort[.]"); *Johnson v. Prince George's Cnty., Maryland*, No. 10-cv-0582-DKC, 2011 WL 806448, at *7 (D.Md. Mar. 1, 2011) ("Public official immunity would not apply to [the plaintiff's] intentional tort claims.")).  Therefore, the claim against Defendant Officers in Count V (battery) will proceed to discovery.

**C. Excessive Force Claims**

Plaintiff brings claims for excessive force against Defendant Officers in violation of 42 U.S.C. § 1983 (Count III) and Articles 16, 24, 25, and 26 of the Maryland Declaration of Rights (Count IV).

Defendants argue Plaintiff's excessive force claims should be dismissed because "there is no basis to draw an inference that any actions present a plausible claim that punishment occurred, only attempts to care for someone experiencing a medical issue." (ECF No. 36-1, at 14).  Plaintiff responds that Defendant Officers' use of force was objectively unreasonable because:  (1) "[t]here was no need for the use of *any* force"; (2) Plaintiff did not pose a threat to anyone because he "was suffering a medical emergency in his cell"; (3) Defendant Officers made no effort . . . to temper or limit the amount of force that they were using"; (4) "no security issue [was] present and none of the Defendant Officers

20

could have reasonably perceived any threat" because "Plaintiff was actively seizing the entire time"; and (5) "Plaintiff, who was undergoing a medical emergency, was certainly not resisting in any manner." (ECF No. 41, at 26). Defendants reply that "[t]he failure to specify allegations against any of the Defendants is fatal to this claim[.]" (ECF No. 44, at 9).

In his § 1983 claim, Plaintiff asserts that Defendant Officers' use of force violated the Fourth, Eighth, and Fourteenth Amendments. (ECF No. 33, at 15, 16). The Fourth Amendment prohibits "unreasonable searches and seizures[.]" U.S. Const. amend. IV. The Eighth Amendment prohibits "cruel and unusual punishments[.]" U.S. Const. amend. VIII. Finally, the Fourteenth Amendment's "Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989)).

It is well-settled that the Fourth Amendment does not govern claims brought by pretrial detainees. *See, e.g.*, *Wallace v. Moyer*, No. 17-cv-3718-CCB, 2020 WL 1506343, at *8 (D.Md. Mar. 30, 2020) (citing *Robles v. Prince George's Cnty., Maryland*, 302 F.3d 262, 268 (4ᵗʰ Cir. 2002)) (dismissing Fourth Amendment claim for excessive force because "the Fourth Circuit has expressly rejected the idea that the Fourth Amendment governs claims brought by pretrial detainees"); *Brown v. Warden*, No. 17-cv-3231-GJH, 2019 WL

1409694, at *5 (D.Md. Mar. 28, 2019) (quoting *Riley v. Dorton*, 115 F.3d 1159, 1164 (4th Cir. 1997), *abrogated on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010)) ("[T]he protection of the Fourth Amendment 'does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody.'"); *Ragins v. Co Lieutenant Derrick Burman*, No. 15-cv-2471-GJH, 2017 WL 5466675, at *3 (D.Md. Nov. 13, 2017) ("[T]he Fourth Amendment does not apply to claims of excessive force against pretrial detainees."). Thus, Count III will be dismissed as to the Fourth Amendment claim.

Courts have consistently held that the Fourteenth Amendment protects pretrial detainees, while the Eighth Amendment protects convicted prisoners. *See, e.g.*, *Wallace*, 2020 WL 1506343, at *9 (citing *Kingsley*, 576 U.S. at 400-01) ("The Supreme Court has explained that the Eighth Amendment's prohibition on cruel and unusual punishment applies only to convicted prisoners, and that a pretrial detainee's claims of mistreatment while detained are instead governed by the Fourteenth Amendment's due process clause."); *Brown*, 2019 WL 1409694, at *4 (quoting *Graham*, 490 U.S. at 395 n.10) (noting that "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment[]" and that "[a]fter conviction, the Eighth Amendment serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified[]"); *Thompson v. Opoku*, No. 18-cv-1022-

ELH, 2020 WL 978681, at *15 (D.Md. Feb. 28, 2020) (quoting *Brown v. Harris*, 240 F.3d 383, 388 (4ᵗʰ Cir. 2001)) ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law."). Because Plaintiff was not a convicted prisoner at the time of the incident giving rise to his complaint, Count III will be dismissed as to his Eighth Amendment claim.

To state an excessive force claim under the Due Process Clause of the Fourteenth Amendment, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396-97. A pretrial detainee need not show subjective intent. *Id.* at 396-97. The determination is made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.* at 397. In evaluating the reasonableness of the force used, courts may consider:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Id.*

Plaintiff's allegations that Defendant Officers repeatedly shoved Plaintiff to the ground while he was seizing indicate that their use of force was "deliberately (not accidentally or negligently) used." *Id.* at 396. "[F]rom the perspective of a reasonable officer on the scene," Plaintiff has also alleged facts showing that Defendant Officers' use of force was excessive. *Id.* at 397. He alleged that he was unconscious, suggesting Defendant Officers' use of force was entirely disproportionate to the minimal security threat a reasonable officer would have perceived. Even if Plaintiff was convulsing and could not follow Defendant Officers' commands, his allegations do not support any inference that he was intentionally resisting, violent, combative, or attempting to flee. Plaintiff's allegations indicate Defendant Officers did not attempt to temper their use of force; rather, he alleges they repeatedly shoved him to the ground for nearly 30 minutes and handcuffed him tightly while he was seizing. Finally, Plaintiff alleges Defendant Officers caused severe injuries including a torn rotator cuff and multiple hand sprains, which have caused significant pain, prevented him from completing most daily tasks independently, and made it nearly impossible for him to work. Thus, it was objectively unreasonable to shove Plaintiff repeatedly to the ground and apply handcuffs so tightly they caused damage to his wrists and hands while Plaintiff was seizing. A reasonable officer in the same situation would likely have

24

stabilized Plaintiff in a position that would minimize injuries resulting from his convulsions and directed the medical staff to provide medical care or transport him to a hospital immediately. Plaintiff can proceed on his claim for excessive force under § 1983. *See, e.g.*, *Thompson*, 2020 WL 978681, at *17-18 (denying correctional officers' motion for summary judgment where plaintiff argued he was not combative and dropped down to the floor when officers extracted him from his cell).

Plaintiff also alleges that Defendant Officers' use of excessive force violates Articles 16, 24, 25, and 26 of the Maryland Declaration of Rights. (ECF No. 33, at 18). Article 24 is construed *in pari materia* with the Fourteenth Amendment, Article 26 is construed *in pari materia* with the Fourth Amendment, and Articles 16 and 25 are construed *in pari materia* with the Eighth Amendment. *Karn v. PTS of Am., LLC*, No. 16-cv-3261-GJH, 2017 WL 4162251, at *9 (D.Md. Sept. 19, 2017) (noting that "the cases are legion in which Maryland Courts have construed Article 26 *in pari materia* with the Fourth Amendment" and "Article 24 is the state analog to the Fourteenth Amendment Due Process Clause"); *Wallace*, 2020 WL 1506343, at *9 ("Maryland courts read Articles 16 and 25 as *in pari materia* with the Eighth Amendment.").

Because Plaintiff has stated a claim for excessive force under the Fourteenth Amendment, his Article 24 claim will also proceed to discovery. His Article 16, 25, and 26 claims will be dismissed

because they, like the Fourth and Eighth Amendments, do not apply to pretrial detainees. *See Wallace*, 2020 WL 1506343, at *8, *9 (dismissing Article 16, 25, and 26 claims because they do not apply to pretrial detainees).

### D. Failure to Provide Adequate Medical Care Claims

Plaintiff alleges Defendants failed to provide adequate medical care in violation of § 1983 (Count VI) and Articles 16, 24, 25, and 26 of the Maryland Declaration of Rights (Count VII).

Defendants assert that these claims should be dismissed because Plaintiff's allegations are "facially implausible in light of facts that are alleged." (ECF No. 36-1, at 17). Specifically, Defendants contend that medical staff were present at the scene immediately, nothing suggests Defendant Officers acted at odds with the medical staff, Plaintiff does not allege that the medical staff should have done anything differently, and Plaintiff was transported to the hospital. (*Id.*). Plaintiff responds that he in fact pled that "Defendant Officers arrived on scene first, ignored the medical personnel, and determined their own course of action—a dangerous and grotesquely insufficient response to a seizure—preventing medical personnel from acting." (ECF No. 41, at 28). Plaintiff argues that Defendant Officers "(1) disregarded the substantial risk of serious injury that would result from immobilizing a person suffering from involuntary muscle spasms, and (2) ignored Plaintiff's serious need for medical care during

26

a seizure, which was readily available in the medical personnel who stood nearby but were not permitted to render aid." (*Id.* at 29). Defendants respond that Plaintiff's allegations "are too non-specific and undifferentiated to state a plausible claim." (ECF No. 44, at 10).

In his § 1983 claim, Plaintiff alleges that Defendants' failure to provide adequate medical care violated the Fourth, Eighth, and Fourteenth Amendments. The Fourth Amendment portion of Count VI and the Maryland Declaration Article 26 portion of Count VII will be dismissed for the same reason that they were dismissed in Plaintiff's excessive force claim. *See, e.g.*, *Fisher v. Fernandez-Casas,* No. 3:20-cv-846-HEH, 2022 WL 1227998, at *2 (E.D.Va. Apr. 26, 2022) (quoting *Mays v. Sprinkle*, 992 F.3d 295, 300 (4th Cir. 2021)) ("Although [Plaintiff] contends that Defendant[]'s actions violate the Fourth Amendment, because [Plaintiff] was likely a 'pretrial detainee and not a convicted prisoner,' the Fourteenth Amendment governs his claims of inadequate medical care.").

The Eight Amendment's prohibition on "cruel and unusual punishment" requires prison officials to provide medical care to convicted prisoners. *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016). "When a prison official demonstrates 'deliberate indifference' to an inmate's serious medical needs, a constitutional violation occurs under the Eighth Amendment."

27

*DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (quoting *Scinto*, 841 F.3d at 236).   "[P]retrial detainees, like inmates under active sentence, are entitled to medical attention, and prison officials violate detainees' rights to due process when they are deliberately indifferent to serious medical needs." *Tarashuk v. Givens*, 53 F.4th 154, 1635 (4th Cir. 2022) (quoting *Gordon v. Kidd*, 971 F.2d 1087, 1094 (4th Cir. 1992)).   Because a pretrial detainee's right to medical attention arises under the Due Process Clause, the Fourth Circuit has ruled that "the Fourteenth Amendment, and not the Eighth Amendment, governs" a pretrial detainee's claim for deliberate indifference to serious medical needs.   *Mays*, 992 F.3d at 300; *see also Brown*, 240 F.3d at 388 (quoting *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992)) ("[I]f [plaintiff] was a pretrial detainee rather than a convicted prisoner, then the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment, 'mandates the provision of medical care to detainees who require it.'").   Thus, the Eighth Amendment portion of Count VI and the Maryland Declaration Articles 16 and 25 portion of Count VII will be dismissed.

The Fourth Circuit recently held that "*Kingsley*'s objective test extends to all pretrial detainee claims under the Fourteenth Amendment claims for deliberate indifference to an excessive risk of harm."   *Short v. Hartman*, 87 F.4th 593, 610 (4th Cir. 2023).

Accordingly, it articulated the standard for claims alleging deliberate indifference to a medical need:

> To state a claim for deliberate indifference to a medical need, . . . a pretrial detainee must plead that (1) they had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed.

*Id.* at 611.

Under this objective standard, a "plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm." *Id.* Rather, "it is sufficient that the plaintiff show that . . . the defendant should have known of that condition and that risk, and acted accordingly." *Id.* The Fourth Circuit advised, however, that "it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee." *Id.* at 611-12.

Plaintiff has stated a claim for failure to provide adequate medical care under § 1983 and Article 24 of the Maryland Declaration of Rights. First, he alleged that he experienced a

seizure during which he convulsed involuntarily—certainly a medical condition that could pose a substantial risk of serious harm.  (ECF No. 33 ¶ 19); *Wise v. C. Maruka*, No. 1:20-cv-00056-OJA, 2021 WL 1603819, at *21 (S.D.W.Va. Jan. 5, 2021), *report and recommendation adopted sub nom. Wise v. Maruka*, No. 1:20-cv-00056, 2021 WL 1146002 (S.D.W.Va. Mar. 25, 2021), *aff'd*, No. 21-6816, 2023 WL 1519515 (4th Cir. Feb. 3, 2023) (presuming a seizure condition subjected plaintiff to a substantial risk of serious harm).

Second, by asserting that Defendant Officers "repeatedly shoved [him] to the ground for nearly 30 minutes . . . while medical staff stood mere inches away," Plaintiff has plausibly alleged both that Defendant Officers' state of mind was at least reckless and that Defendant Officers failed to address the risk that Plaintiff's seizure presented. (ECF No. 33 ¶ 34).  Taken as true, Plaintiff's allegations suggest that Defendant Officers recklessly risked further harm by repeatedly shoving him to the ground and restraining him while he was actively seizing, and failed to address the risk that Plaintiff's seizure presented by failing to provide, or failing to direct the medical staff present to provide, medical care.

Third, Plaintiff has alleged that Defendant Officers knew or should have known he was seizing because he pled that (1) two detainees, believing Plaintiff was experiencing a medical

emergency, banged on the unit door to get the attention of the correctional officers in the hallway; (2) Defendant Officers observed him convulsing; (3) medical staff also responded to the cell; and (4) while being transported to the hospital, Officer Burrell informed Plaintiff he had a seizure.  (ECF No. 33 ¶¶ 20, 21, 23, 28, 30, 31, 34, 36).  Plaintiff also plausibly alleged that Defendant Officers' decision to force him to the ground repeatedly and failure to provide or direct the provision of medical care for nearly 30 minutes posed an unjustifiably high risk of harm.

Fourth, Plaintiff has alleged that Defendant Officers' conduct caused harm including a torn rotator cuff, buildup of scar tissue that causes pain, and multiple hand sprains.  (ECF No. 33 ¶¶ 42, 43, 57).

Thus, Plaintiff has plausibly alleged Defendant Officers were deliberately indifferent to his medical needs.  Plaintiff's claims against Defendant Officers for failure to provide adequate medical care under § 1983 and Article 24 of the Maryland Declaration of Rights will proceed to discovery.[6]

_____

[6] Plaintiff also names Defendant County in Counts VI and VII. Because Plaintiff does not include any allegations specific to Defendant County in Counts VI or VII, however, Defendant County's liability for failure to provide adequate medical care is more appropriately addressed in the *Monell* and *Longtin* analysis below.

### E. *Monell* and *Longtin* Claims

Plaintiff brings *Monell* and *Longtin* claims in Counts VIII and IX respectively.  In his *Monell* claim, he alleges that Defendant County engaged in a pattern and practice of continually delegating its non-delegable duty to ensure the safety of inmates and detainees.  (ECF No. 33 ¶¶ 122-125).  He also alleges that by failing to establish effective procedures, rules, orders, guidelines, and practices to ensure that violations of the rights of citizens do not occur, and by failing to ensure that allegations of such violations will be thoroughly investigated and appropriately punished, Defendant County instituted and maintained formal and informal customs, policies, and practices that foster, promote, and encourage employees to violate the rights of citizens. (*Id.* ¶¶ 128, 129).  Plaintiff's *Longtin* claim is similar, although in it, he also (1) specifies that the right Defendant County violated was the right to receive adequate medical care; (2) includes a failure-to-train claim; and (3) alleges that Defendant County has been sued in the past for failing to provide adequate mental health care and accommodations for detainees with disabilities.  (*Id.* ¶¶ 139-141, 146, 147).

Defendants argue Plaintiff's *Monell* and *Longtin* claims should be dismissed because Plaintiff (1) does not specify which duties relating to the health and safety of inmates Defendant County violated; (2) does not identify a particular policy, pattern, or

practice Defendant County maintained; and (3) does not identify a single example of unconstitutional conduct other than the one Plaintiff allegedly experienced.  (ECF No. 36-1, at 19-21).

Plaintiff responds that he stated a *Monell* claim by demonstrating a custom by condonation, which does not require him to point to any express written policy or policymaker's decision, and instead requires him to point to the government's actual or constructive knowledge of the conduct and failure to correct it due to deliberate indifference.  (ECF No. 41, at 31).  Plaintiff argues he met this standard because Defendant County unconstitutionally permitted lay individuals to provide medical care, which demonstrates a gross disregard for the health and safety of detainees.  (*Id.* at 31-32).  Plaintiff also contends that the Fourth Circuit has found that plaintiffs have pled sufficient *Monell* claims where they alleged that other cases existed, without identifying any prior incident.  (*Id.* at 30-31) (citing *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 403 (4th Cir. 2014)).  Finally, Plaintiff maintains that because he has met the pleading standard for a *Monell* claim, he has also satisfied the pleading standard for a *Longtin* claim, which is broader in nature because the protections of the Maryland Declaration of Rights extend beyond federal constitutional protections.  (*Id.* at 32).

Defendants reply that Plaintiff's allegations of previous cases "lack the similarity and pervasiveness" required by *Owens* and "appear as isolated incidents at best, without any description that those cases were even meritorious." (ECF No. 44, at 11).

Section 1983 permits a plaintiff to bring a claim against a municipality if the municipality maintained a policy or custom that caused violation of a constitutional right. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 699-91 (1978). A plaintiff can show the existence of a policy or custom in four ways:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Here, Plaintiff does not allege the existence of an express policy or decision of a person with final policymaking authority. Plaintiff attempts to allege the existence of a policy or custom by (1) arguing Defendant County failed to train its correctional officers and (2)

identifying a custom by condonation of failing to provide adequate medical care.[7]   (ECF No. 33 ¶¶ 140-147).

### 1.   Failure to Train

A municipality can only be held liable for a failure to train under § 1983 where the failure reflects a "deliberate" or "conscious" choice on the part of the municipality.   *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).   Thus, a "complaint should contain facts revealing:  (1) the nature of the training, (2) that the training was a 'deliberate or conscious' choice by the municipality, and (3) that the officer's conduct resulted from said training."   *Peters v. City of Mount Rainier*, No. 14-cv-00955-GJH, 2014 WL 4855032, at *5 (D.Md. Sept. 29, 2014) (quoting *Lewis v. Simms*, No. 11-cv-2172-AW, 2012 WL 254024, at *3 (D.Md. Jan. 26, 2012)).

Plaintiff has not alleged such facts.   He alleges solely that Defendant County's "training and supervision do not effectively protect detainees which has resulted in the repeated injury of detainees like Plaintiff[]" and "Defendants have failed to properly train, supervise, and discipline their officers with respect to the proper response to a detainee experiencing a medical

---

[7] These allegations are included in Count IX, which Plaintiff labels as his *Longin* claim, but not in Count VIII, which Plaintiff labels as his *Monell* claim.   Because *Monell* and *Longin* claims are treated the same, *Palma v. Montgomery Cnty., Maryland*, 598 F.Supp.3d 288, 297 n.5 (D.Md. 2022), the court will consider Plaintiff's allegations in both counts in its analysis.

emergency." (ECF No. 33 ¶¶ 140, 141). Plaintiff does not allege any detail about Defendant County's training practices or how they led to a pattern or practice of providing inadequate medical care. Without more, Plaintiff's conclusory allegations do not plausibly state a claim for municipal liability based on Defendant County's failure to train its correctional officers. *See, e.g.*, *Grim v. Baltimore Police Dep't*, No. 18-cv-3864-ELH, 2019 WL 5865561, at *18 (D.Md. Nov. 8, 2019) (dismissing claim where "plaintiff allege[d] that the BPD failed properly to train officers, but she does not identify any particular BPD training practices or any specific defect or omission in the BPD training program"); *Devi*, 2017 WL 3592452, at *3 (dismissing claim where "Plaintiff merely state[d] in conclusory terms that Defendant County failed to adequately train, supervise, and discipline its officers against the use of excessive force, thereby demonstrat[ing] a gross disregard for the constitutional rights of the public and [Plaintiff]") (internal quotation marks omitted); *Peters*, 2014 WL 4855032, at *5 (dismissing failure-to-train allegation that "is nothing more than a bare-bones generalization that a legal element (*i.e.* the policy[-]or-custom element) is met").

### 2. Custom by Condonation

Under the custom by condonation theory of liability, "a city violates § 1983 if municipal policymakers fail 'to put a stop to or correct a widespread pattern of unconstitutional conduct.'"

*Owens*, 767 F.3d at 402 (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1389 (4ᵗʰ Cir. 1987)).   In a custom by condonation claim, a "plaintiff must point to a 'persistent and widespread practice[ ] of municipal officials,' the 'duration and frequency' of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their 'deliberate indifference.'" *Id.* (quoting *Spell*, 824 F.2d at 1386-91).   "Both knowledge and indifference can be inferred from the 'extent' of employees' misconduct."   *Id.* at 402-03 (citing *Spell*, 824 F.2d at 1391). "Sporadic or isolated violations of rights will not give rise to *Monell* liability; only 'widespread or flagrant' violations will."   *Id.* at 403 (citing *Spell*, 824 F.2d at 1387).

The Fourth Circuit has emphasized that the pleading standard on a *Monell* claim is low.   *Id.*   Indeed, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high."   *Id.*   "A plaintiff fails to state a claim only when he offers 'labels and conclusions" or formulaically recites the elements of his § 1983 cause of action."   *Id.* (quoting *Iqbal*, 556 U.S. at 678).   Accordingly, the *Owens* court determined that the plaintiff sufficiently pled a custom by condonation claim where he alleged that other cases existed but did not name them. *Id.* at 403 ("The assertions as to 'reported and unreported cases'

and numerous 'successful motions' are factual allegations, the veracity of which could plausibly support a *Monell* claim.").

Here, Plaintiff alleged that Defendant County "has been sued on at least two separate occasions for failing to provide adequate mental health care, leading to the untimely deaths of at least two detainees[]" and "has been sued on at least one prior occasion for failing to provide accommodations for detainees with disabilities." (ECF No. 33 ¶¶ 146, 147). These allegations do not satisfy even the low pleading standard for *Monell* claims articulated in *Owens*. The instant suit alleges Defendants failed to provide adequate medical care, not mental health care, and does not allege that Defendants failed to provide disability accommodations for Plaintiff. Because the lawsuits Plaintiff relies upon do not allege the same kind of misconduct of which Plaintiff complains here, the three examples do not indicate a "persistent and widespread practice" of failing to provide adequate medical care. *Owens*, 767 F.3d at 402 (quoting *Spell v*, 824 F.2d at 1389). Nor has he alleged that any of the cases involved conduct—and adverse adjudication—prior to the conduct in this case. Thus, Plaintiff has not plausibly alleged Defendant County engaged in a custom by condonation of tolerating constitutional violations of detainees' right to receive adequate medical care.

Plaintiff's *Monell* claim will be dismissed, as will his *Longtin* claim. "Courts in this district have stated that '*Longtin* claims are essentially Maryland's version of *Monell* claims.'" *McCullough*, 2020 WL 836235, at *6 (quoting *Krell*, 2018 WL 6523883, at *16); *see also Rosa v. Bd. of Educ. of Charles Cnty., Md.*, No. 8:11-cv-02873-AW, 2012 WL 3715331, at *9 (D.Md. Aug. 27, 2012). "Thus, *Monell* and *Longtin* claims rise or fall together, and the Court need not undertake an independent analysis of the sufficiency of the latter." *Palma*, 598 F.Supp.3d at 297 n.5 (citing *Krell*, 2018 WL 6523883, at *15).

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted as to (1) Plaintiff's negligence and gross negligence claims against Defendant County, with leave to amend to add a request for a declaration that Defendant County is obligated to indemnify Defendant Officers (Counts I and II); (2) the portion of Plaintiff's excessive force and failure to provide medical care claims alleging violations of the Fourth Amendment, Eighth Amendment, and Articles 16, 25, and 26 of the Maryland Declaration of Rights (Counts III, IV, VI, VII); and (3) Plaintiff's *Monell*

and *Longtin* claims (Counts VII and IX).  Defendants' motion will be denied as to all other claims.  A separate order will follow.

                                                 /s/

                                       DEBORAH K. CHASANOW
                                       United States District Judge